IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


KYLE STEVEN JOHNSTON                                                    PLAINTIFF


V.                                    NO. 6:19-CV-6090-RTD


MONTEREY COLLECTIONS SVC                                              DEFENDANT


**MEMORADUM OPINION AND ORDER**


Now before the Court is Defendant's Motion for Summary Judgment (Mot. Summ. J., Sept. 14, 2020, ECF No. 18).  Plaintiff Kyle Steven Johnston originally filed suit in the District Court of Hot Springs, Small Claims Division, Garland County, Arkansas, alleging violation(s) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1592, *et seq*.  (Compl., July 2, 2019, ECF No. 3.) In his self-drafted Complaint, Plaintiff disputes the validity of the contract underlying the alleged debt and asserts Defendant violated the FDCPA by harassing him, failing to properly substantiate the debt, and continuing to report negative information to credit reporting agencies over his objection.[1]  By way of relief, Plaintiff seeks damages in the amount of $3,000 plus costs and fees. (Compl., *id.* at 2.)  Defendant removed the case to this court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, (Not. of Removal, July 30, 2020, ECF No. 1), and filed a motion for summary judgment arguing that its conduct did not violate the FDCPA.  This Court has jurisdiction pursuant to 28 U.S.C. §§1331.  Upon review, the Court finds summary judgment is proper and the motion should be GRANTED.

---

[1] Plaintiff originally filed suit in *pro se* and is now represented by counsel.

I.      BACKGROUND

The facts are not in dispute and they are recited in a light most favorable to the Plaintiff. On or about March 1, 2017, Plaintiff and his now ex-wife, Melanie Johnston, purchased a membership in a time share vacation club (Vacation Club or the Club).  To this end, they entered into a Global Exchange Vacation Club Promissory Note and Security Agreement, (Global Agreement, ECF No. 18-2, pp. 1-8), with Global Exchange Development Corp. (Global or the Creditor.) The Vacation Club includes mandatory membership in the Club Owner's Association (the Association) with the duty to manage, maintain and administer the Club (*Id.* at ¶¶ 1, 8, 11). Under the terms of the Global Agreement, Plaintiff became obligated to pay monthly payments on the balance of the purchase price beginning 30 days after close of escrow plus additional regular and special assessments as levied by the Association.  (*Id*.)  According to the Escrow Closing Statement, the settlement date was March 22, 2017. (Escrow Closing Statement, ECF 18-2 at 9.) Assessments are based on the value of the number of Club membership points purchased and are subject to amendment or supplement. (Global Agreement, *id.* at ¶¶ 1, 8, 11.)  Plaintiff and Melanie Johnston agreed to purchase 10,000 membership points with an initial assessment of $0.0149 per point or $149.00 (*Id.* at ¶1).  Escrow settled March 22, 2017.  (Escrow Closing Statement, *id.*) Plaintiff made payments for about six months but stopped after he and Melanie separated, and his income was reduced by half.  (Pl.s Depo, ECF No. 18-11 at 32.)  Plaintiff did not and has not attempted to cancel the Global Agreement.  (Pl.'s Depo., ECF 18-11.)  Plaintiff has not filed suit against Global seeking to invalidate the terms of the Global Agreement. (*Id.*)

On or about December 1, 2018, Global referred Plaintiff's account to Defendant Monterey[2] for debt collection purposes.  Monterey mailed to Melanie Johnston and Plaintiff at their home address an "Initial Notice Letter" informing them that the Global account had been placed with

---

[2] Plaintiff misnames Defendant Monterey Financial Services, LLC in the Complaint.  The named defendant, Monterey Collection Services SVC, is not an entity.  Defendant is a debt collector located in San Diego, California.

Monterey for collection.[3]  The Initial Notice set out the balance of the principal, interest and fees due on the account and included instructions on how to dispute the validity of the debt, obtain verification of the debt, and request the name of the original creditor (Initial Notice Letter, December 6, 2018, ECF No. 18-3 at 2).  Plaintiff was given thirty (30) days to respond.  The Initial Notice was not returned undelivered.  After receiving no response from Plaintiff, Monterey began reporting the defaulted account to credit reporting agencies beginning January 31, 2019.

Plaintiff does not recall receiving the Initial Notice.  He first became aware his credit was being negatively affected on or around March 8, 2019 after he was declined for a loan.   The experience got Plaintiff to wondering about what might be on his credit report and he ordered a free copy.  Upon review of this report, Plaintiff discovered many issues, inaccuracies, and items of misinformation, of which Monterey was just one.  Pl.'s Depo., ECF No. 18-11 at 43.  For the next six months, Plaintiff worked to clean up his credit.  *Id.*

As part of this effort, Plaintiff sent a letter to Monterey COLL SVC dated March 8, 2019 asking to verify the original signed consumer contract.  (Verification Request 1, ECF 18-4 at 2. Less than a week later, on March 13, 2019, Plaintiff sent a second letter explaining that pursuant to "the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809{b}" the debt was being disputed and validation rather than verification was requested.  "I respectfully request that your offices provide me with competent evidence that I have any legal obligation to pay you." (Verification Request 2, ECF 18-5 at 2.)    Plaintiff specifically asked to be provided with items of information including "copies of papers that show I agreed to pay what you say I owe" and an explanation and calculation of the amounts allegedly owed, among other things.  *Id.*

Upon receipt of Plaintiff's request, Monterey marked the account as disputed and contacted Global to obtain a copy of the signed Global Agreement.  Plaintiff was mailed a copy of the

---

[3] The letter is addressed to both Melanie Johnston and Kyle Johnston, each individually, with Melanie's name appearing first.

Agreement.[4] (Verification Letter 1, March 23, 2019, ECF 18-6 at 2).   The Verification Letter explained that the information was being forwarded as a courtesy only, that Plaintiff's account had been marked disputed; and that the "defaulted contract balance for Global Exchange Development remain[ed] due."   *Id.*   Plaintiff was encouraged to call Monterey to set up the necessary arrangements to satisfy his obligation to the contract.   *Id.*   The Verification Letter did not include an explanation or calculation of the alleged amount of the defaulted contract balance.   A second Verification Letter, substantially the same as the first and including a second copy of the Global Agreement (not including the Escrow Settlement Statement), was sent a few days later. (Verification Letter 2, March 27, 2019, ECF 18-7 at 2.) On June 27, 2019, Monterey sent Plaintiff a third and final letter enclosing the "necessary proof of debt" and advised Plaintiff that "future disputes received will not be responded to by our office."  (Verification Letter 3, June 27, 2019, ECF 18-8 at 2.)  All the while, Plaintiff's Global account was being reported as disputed to credit reporting agencies.

Dissatisfied with this result, Plaintiff sued Monterey Collections Svc in the Small Claims Division of the Hot Springs, Arkansas, District Court alleging claims under the "FDCPA Section 806, FDCPA Section 809(b), FDCPA Section 623, Voidable Contract."[5]  ECF No. 3.  Specifically, Plaintiff alleges that Monterey harassed him by sending the same inadequate response "at or near two times a month." *Id.*  Plaintiff alleges that Monterey violated the FDCPA by not removing the debt and continuing to report the debt delinquent without properly validating or substantiating the debt costing thousands in extra fees for home and auto insurance.  *Id.*  Plaintiff alleges the underlying debt is invalid because it has multiple interest rates and no start date or due date.  *Id.* Plaintiff's claims are limited to violations of the FDCPA.  Plaintiff is not suing Monterey under

---

[4] A copy of the Escrow Closing Statement was not included.
[5] FDCPA Sections 806, 809(b), and 623 do not exist.  Plaintiff's claims are construed under the provisions of the Consumer Credit Protection Act, §802 et seq., as amended, 15 U.S.C.A. § 1692 et seq.

the Fair Credit Reporting Act.  (Pl.'s Depo, ECF No. 18-11 at 28.)  Plaintiff claims damages in the amount of $3,000.00.

Defendant Monterey has filed a motion for summary judgment arguing that the record clearly establishes all debt collection efforts were in full compliance with the FDCPA and did not violate the statute as a matter of law.  In response, Plaintiff contends that material issues of fact remain to be resolved including whether Plaintiff received the Initial Notice; whether the Global Agreement is unenforceable; whether Defendant failed to properly validate the alleged debt in violation of the FDCPA; whether Defendant's refusal to provide any information other than a copy of the Global Agreement despite repeated requests for additional information amounted to harassment under the FDCPA; and whether Defendant violated a duty to make a preliminary determination the reported information was accurate.  (Pl.s' Resp. to Mot. Summ. J., ECF No. 24-1.)  For the following reasons, the motion for summary judgment will be GRANTED.


II.      SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id*.  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 256.

III.    DISCUSSION

The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*, is a subchapter of the Consumer Credit Protection Act established to protect consumers from abusive, deceptive, and unfair debt collection practices by debt collectors.  *See* 15 U.S.C. § 1692(e).  A collector who violates the FDCPA may be civilly liable for actual damages and additional damages up to $1000 per action.  § 1692k.

A.    Abusive Practices

The Complaint alleges Monterey violated the FDCPA by persistently sending Plaintiff, as many times as twice in one month, the same inadequate response to his requests for verification and validation.  The Consumer Credit Protection Act, §806, 15 U.S.C. §1692d (FDCPA) prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass,

oppress, or abuse any person in connection with the collection of a debt." The issue of whether a debt collector's conduct amounts to harassment or annoyance in violation of the Act "ultimately turns on evidence regarding the … frequency, pattern, or substance of the [communication]." *Kuntz v. Rodenburg LLP*, 838 F.3d 923, 926 (8th Cir. 2016). A fact intensive issue may be "resolved as a matter of law when the summary judgment record establishes that no reasonable jury could find the requisite level of harassment." *Id.* (citations omitted.)

The Court finds as a matter of law that Monterey's conduct sending two near identical letters in response to Plaintiff's requests for information does not amount to harassment under the FDCPA. Accordingly, the Court concludes there is no material factual dispute for trial and summary judgment should be granted against Plaintiff on the claim for abusive practices pursuant to the FDCPA, 15 U.S.C. § 1692d.

B.      Inadequate Verification and Validation

Plaintiff alleges that Monterey violated the FDCPA when it continued to "report [the Global debt] to credit bureau despite being disputed by consumer demanding removal over not being validated." Compl., ECF No. 3. Plaintiff asserts that Monterey failed to adequately validate the debt and that the Verification Letters amounted to false or misleading representations of the character, amount, or legal status of the alleged debt. *See* Consumer Credit Protection Act §809(b), 15 U.S.C. § 1692g(b); *see also* Consumer Credit Protection Act, § 807, 15 U.S.C. §1692e.

To withstand summary judgment on a claim of inadequate debt validation under § 1692g(b), a plaintiff must demonstrate proof of the following elements: (1) that he is a consumer; (2) that defendant is a debt collector who contacted him in an attempt to collect a debt; (3) that plaintiff timely notified defendant in writing that the debt was disputed; and (4) that defendant resumed or failed to cease debt-collection efforts without first (a) obtaining verification of the debt or a copy of a judgment and (b) mailing a copy of the verification or judgment to the consumer. *See Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1001 (8th Cir. 2011).

1.      Timely Notice of Dispute

In support of summary judgment, Monterey argues Plaintiff's FDCPA claim fails because Plaintiff cannot allege facts showing he sent a written notice of dispute within thirty days of the Initial Notice of Debt mailed December 6, 2018.  Plaintiff argues that summary judgment is precluded in this case because a credibility issue exists around whether he ever received the Initial Notice.  The Court declines to grant summary judgement on this issue.  There is no question that Monterey mailed the Initial Notice; or that Plaintiff first requested verification of the debt by writing dated March 8, 2019; or that Plaintiff disputed the debt and requested validation by a second writing dated March 13, 2019.  There is no question that Monterey responded to these written requests by providing Plaintiff with the name and address of the creditor and a copy of the Global Agreement.  To the extent Monterey seeks summary judgment on the grounds that Plaintiff did not timely request verification, the motion is denied.


2.      Verification

Plaintiff contends Monterey violated the FDCPA when it did not sufficiently verify the Global debt or remove it from his credit report after he disputed its validity.  Assuming Plaintiff's dispute notices were timely, the issue becomes whether Monterey failed to cease debt-collection efforts without first obtaining verification and mailing a copy to Plaintiff as required by the FDCPA.

Section 1692g obligates collectors to send a consumer written notice of an alleged debt setting forth the amount of the debt; the name of the creditor; a statement that the debt will be assumed valid unless the consumer disputes the validity of the debt in writing "within thirty days after receipt of the notice"; and a statement that the collector will provide the name and address of the original creditor upon the consumer's written request within the thirty-day period. *See* §1692g(a).  If the consumer timely notifies the collector in writing that the debt or any portion

thereof is disputed, "the debt collector shall cease collection of the debt" until the debt collector obtains verification of the alleged debt and a copy is mailed to the consumer. § 1692g(b).

"Once the consumer notifies a debt collector and disputes the debt, "[a]t a minimum, the debt collector must contact the creditor and verify the nature, status, and balance of the debt and then convey that information to the consumer." *Eide v. Colltech, Inc.*, 987 F.Supp.2d 951, 959 (D.Minn. Dec. 11, 2013). "Consistent with the legislative history, verification is only intended to 'eliminate the … problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Dunham v. Portfolio Recovery Associates*, LLC., 663 F.3d 997, 1003 (8th Cir. 2011). Verification may be nothing more than the collector confirming in writing the amount being demanded and name and address of the creditor. *See Dunham, id.* at 1003 (verification sufficiently put consumer on notice that collector dunned the wrong person); (*Chaudhry v. Gallerizzo*, 174 F.3d 394, 43 Fed.R.Serv.3d 1063 (4th Cir. 1999) (finding no obligation to forward copies of bills or other detailed evidence of the debt). A debt collector may not use false or misleading means to collect a debt. *See* 15 U.S.C. § 1692e.

The Court finds that Monterey's Verification Letters were sufficient to put Plaintiff on notice of the nature, status, and balance of the debt allegedly owed to Global. There is no dispute that upon receipt of Plaintiff's requests to verify, Monterey promptly marked the account as disputed, contacted Global and obtained a copy of the Global Agreement bearing Plaintiff's signature and mailed a copy to Plaintiff. Plaintiff does not dispute receiving the Verification Letters. Plaintiff does not deny that he purchased the vacation club membership or that he signed the Global Agreement or that he stopped making the payments or that the debt is unpaid. The Court finds as a matter of law that the errors allegedly contained within the verifications regarding applicable interest rates, payment start dates, and balances and amounts, do not amount to deceptive, misleading or material statements by a debt collector in violation of the Act.

*See Hemmingsen v. Messerli & Kramer, P.A.,* 674 F.3d 814, 819 (8th Cir.2012) (noting that a representation must mislead or deceive or dupe someone for it to be misleading). The Court concludes that Monterey did not violate the terms of the FDCPA.

V.      ORDER

Wherefore, the Court makes its order as follows:

The Motion for Summary Judgment (ECF No. 18) should be and here by is GRANTED and this case is DISMISSED.

Each party shall bear its own costs.

**IT IS SO ORDERED** this 2nd day of February 2020.


/s/ *Robert T. Dawson*
**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**